> **NOT FOR PUBLICATION WITHOUT THE**
> **APPROVAL OF THE APPELLATE DIVISION**
>
> This opinion shall not "constitute precedent or be binding upon any court."
> Although it is posted on the internet, this opinion is binding only on the
> parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1976-15T1

NEWTON WEST, LTD.,

    Plaintiff-Appellant,

v.

TOWN OF NEWTON,

    Defendant-Respondent.

_____

        Argued telephonically on June 12, 2017 —
        Decided September 8, 2017

        Before Judges Koblitz, Rothstadt and Sumners.

        On appeal from the Tax Court of New Jersey,
        Docket No. 9612-2010.

        Lawrence S. Berger argued the cause for
        appellant (Berger & Bornstein, LLC, attorneys;
        Mr. Berger, on the briefs).

        Thomas H. Prol argued the cause for respondent
        (Laddey, Clark & Ryan, LLP, attorneys; Mr.
        Prol, on the brief).

PER CURIAM

In this appeal from the Tax Court's rejection of a taxpayer's Freeze Act action, N.J.S.A. 54:51A-8,[1] plaintiff, Newton West, Ltd., the owner of an apartment building in defendant Town of Newton challenges the court's finding that plaintiff's action was time barred, the court was without jurisdiction to consider the matter and, in any event, defendant was permitted to increase plaintiff's property's assessment under an exception to the application of the Freeze Act when a municipality conducts a "complete reassessment or complete revaluation" of all properties. For the reasons stated below, we vacate the court's denial of relief and remand to the Tax Court for reconsideration.

---

[1]    The Freeze Act states:

> Where a judgment not subject to further appeal has been rendered by the Tax Court involving real property, the judgment shall be conclusive and binding upon the municipal assessor and the taxing district, parties to the proceeding, for the assessment year and for the 2 assessment years succeeding the assessment year covered by the final judgment, except as to changes in the value of the property occurring after the assessment date. The conclusive and binding effect of the judgment shall terminate with the tax year immediately preceding the year in which a program for a complete revaluation or complete reassessment of all real property within the district has been put into effect.
>
> [N.J.S.A. 54:51A-8 (emphasis added).]

A-1976-15T1

The material facts are not disputed and are summarized as follows. After plaintiff filed a tax appeal from its property's 2010 assessed valuation, the parties reached an agreement as to the value and the Tax Court entered a judgment on June 17, 2011, fixing the assessment in the agreed upon amount. Prior to the entry of the judgment and despite the Freeze Act's "conclusive and binding" effect, defendant increased the property's assessed value for 2011, and the next two years.[2]

Defendant notified plaintiff of the increased assessments based upon its reassessment[3] of properties within the entire community, which began in 2010. In order to pursue the reassessment, defendant submitted an application to the County Tax Board and the State Division of Taxation (Division). The application indicated that the reassessment would not include an attempt to inspect all properties in the communities. In an addendum to the application, defendant noted a "diligent attempt will be made to inspect the interior and exterior of all improvements that remain as 'estimates' from the 2008 Revaluation

---

[2] The reassessment valued plaintiff's property at $9,433,000.00 for the 2011 tax year, an increase of $1,033,000 above the agreed upon 2010 property value.

[3] Defendant had previously conducted a revaluation in 2008 in order to redistribute the burden of falling property values among the commercial and residential properties.

A-1976-15T1

. . . . [a]n attempt will also be made to gain entry into any properties that have sold within the past 2 years, . . . . [and] [a]n attempt will be made to gain entry into any properties that are currently listed 'for sale' through the [Garden State Multiple Listing Service]." The reassessment was to be completed by January 10, 2011.

After conducting a public hearing, the County Tax Board approved defendant's application, including defendant's proposal to use an outside contractor, Appraisal Systems, Inc. (ASI), to assist in the process. The Division also stated that it expected to receive "monthly status reports on the progress of the work from the assessor." On October 13, 2010, defendant's council passed a resolution authorizing defendant's retaining ASI "for the complete assessment of all real property with the Town of Newton."

Defendant sent property owners letters dated November 5, 2010, advising them of the planned reassessment. According to the letter, not all properties would be inspected. Instead, "[i]nspections will be conducted on properties that have been recently sold and/or listed for sale, properties that were never inspected during the last Revaluation, and properties that have had substantial renovations since the last Revaluation or where the [property record cards] data is in question." The assessment

was to be finalized by early January 2011 "at which point all new assessments will become effective for the 2011 tax year."

According to plaintiff, ASI's actual work was limited to inspecting only a fraction of the municipality's properties for the purpose of defendant completing the revaluation. As proof, it relied upon defendant's agreement with ASI that only required inspection of a property's interior and exterior "that require[d] inspection." Also, defendant's tax assessor instructed ASI to inspect only a fraction — 400 of 2900 — of the properties, and, ultimately, only 101 properties were actually inspected.[4]

After receiving notice of the increased assessments for its property, plaintiff filed timely tax appeals for each year. The court dismissed plaintiff's action challenging the 2011 assessment, which did not seek enforcement of the Freeze Act, because plaintiff would not supply "Chapter 91" income information.[5]

---

[4] In 2013, the County Tax Board "determined that the assessment of [defendant] result[ed] in an unequal distribution of the tax burden within [the] municipality" and directed defendant to "implement a municipal wide reassessment to be completed by December 31, 2013 and to be effective for the 2014 tax year." The Division later entered an order implementing the Board's directive.

[5] A Chapter 91 request is the common name for a request by a municipal assessor for income information from the taxpayer in accordance with N.J.S.A. 54:4-34. 1717 Realty Assocs., LLC v.

Plaintiff filed a motion with the Tax Court in November 2014 seeking to enforce the Freeze Act as to the 2011 and 2012 assessments — more than three years after the filing deadline for appealing the 2011 assessment and two years for the 2012 assessment. In its supporting papers, plaintiff stated that the increase in the assessment was not the product of "a complete revaluation or complete reassessment." Defendant responded and asserted that that the increased assessments were allowed by an exception to the Freeze Act that permits an increase when it is due to a "complete" revaluation of the municipality. The parties engaged in discovery as to the issue of whether defendant conducted the complete revaluation contemplated by the Freeze Act, and once completed, provided the court with supplemental submissions on the issue.

The Tax Court judge considered the matter, denied plaintiff any relief and placed his decision on the record on December 4, 2015, which he later amplified in writing, Rule 2:5-6(c). The judge explained that plaintiff's action was untimely because, as

Borough of Fair Lawn, 201 N.J. 275, 275 n.1 (2010). Under N.J.S.A. 54:4-34, "[n]o appeal shall be heard from the assessor's valuation and assessment with respect to income-producing property where the owner has failed or refused to respond to such written request for information within 45 days of such a request." N.J.S.A. 54:4-34. See 1717 Realty Assocs., supra, 201 N.J. at 279-80 (upholding the constitutionality "of the appeal-preclusion sanction of N.J.S.A. 54:4-34").

a tax appeal, the matter should have been filed by April 1, 2011, for the 2011 tax year and, by not complying with the Chapter 91 requests, plaintiff "lost its shot" to challenge the application of the exception to the Freeze Act. If the action was considered as a challenge to defendant's decision to pursue the reassessment, the judge found that the action was cognizable as an action in lieu of prerogative writs only in the Superior Court, unless that court referred the matter to the Tax Court. Ultimately, the judge concluded, that plaintiff was not entitled to any relief because the increased assessment was the result of defendant's complete revaluation as contemplated by the exception to the Freeze Act. In his written amplification, the judge stated that he "concluded that [defendant's] 2011 reassessment was indeed complete, and therefore the application of the Freeze Act to tax years 2011 and 2012 was not appropriate." The judge found that although the Freeze Act does not define the word "complete" as it relates to reassessment, the Division has promulgated regulations setting for the requirements that must be met, N.J.A.C. 18:12A-1.14(c)(3), which "the evidence demonstrates that [defendant] has satisfied the preconditions necessary for its 2011 complete reassessment." He found that defendant satisfied the statutory requirements of a "complete" reassessment because it held a public hearing before it adopted a formal resolution authorizing the revaluation, the

County Tax Board formally approved its application to conduct the revaluation, and it obtained approval from the Division.

Plaintiff argues that the approved plan was not a "complete reassessment," and, even if it was, the execution of the approved plan was insufficient to constitute a "complete reassessment." According to plaintiff, defendant failed to establish a prima facie showing that it was entitled to application of the exception under the Freeze Act. Moreover, plaintiff contends that even if defendant proved it satisfied the requirement for the exception to the act, the exception still should not be applied because it "should be invoked only where application of the Freeze Act results in [in]equitably favorable treatment of a particular taxpayer." Defendant disagrees, arguing that plaintiff's challenge to the complete reassessment is untimely and that defendant conducted the reassessment in accordance with the plan approved by the County and State, is consistent with the Freeze Act and applicable regulations and, in any event, plaintiff has no standing to challenge the implementation of the reassessment process.

In our review of a Tax Court's judgment, we "recognize the expertise of the Tax Court in this 'specialized and complex area.'" Advance Hous., Inc. v. Twp. of Teaneck, 215 N.J. 549, 566 (2013) (quoting Metromedia, Inc. v. Dir., Div. of Taxation, 97 N.J. 313, 327 (1984)). Our review is limited to whether the Tax Court's

determination is supported by substantial credible evidence "with due regard to the Tax Court's expertise and ability to judge credibility." Southbridge Park Inc. v. Borough of Fort Lee, 201 N.J. Super. 91, 94 (App. Div. 1985) (citing Rova Farms Resort, Inc. v. Investors Ins. Co., 65 N.J. 474 (1974)). "[J]udges presiding in the Tax Court have special expertise; for that reason their findings will not be disturbed unless they are plainly arbitrary or there is a lack of substantial credible evidence to support them." Hackensack City v. Bergen Cty., 405 N.J. Super. 235, 243 (App. Div. 2009) (alteration in original) (citations omitted). "Although the Tax Court's factual findings 'are entitled to deference because of that court's expertise in the field,' we need not defer to its interpretation of a statute or legal principles." Advance Hous., supra, 215 N.J. at 566 (quoting Waksal v. Dir., Div. of Taxation, 215 N.J. 224, 231 (2013)).

We begin with the Freeze Act, which does not refer to any time period for filing a motion to enforce its provisions. See N.J.S.A. 54:51A-8; see also R. 8:7(d). The act protects a taxpayer by "freezing" an assessment for the two years following a tax year for which there is a final judgment of the Tax Court. Ibid. "[J]udgments of the Tax Court obtained by settlement between the parties . . . are entitled to Freeze Act protection." Grandal Enters., Inc. v. Borough of Keansburg, 292 N.J. Super. 529, 537

(App. Div. 1996) (citing <u>S. Plainfield Borough v. Kentile Floors, Inc.</u>, 92 <u>N.J.</u> 483, 487-89 (1983)). The act "is designed to protect the taxpayer and grant repose to a final judgment of the Tax Court for a period of two years, preventing arbitrary actions of the taxing authority." <u>Hackensack City</u>, <u>supra</u>, 405 <u>N.J. Super.</u> at 250 (citation omitted).

A Freeze Act action filed by a taxpayer is independent of any tax appeal pursued by the taxpayer under <u>N.J.S.A.</u> 54:3-21,[6] which challenges the fairness of an assessment. Because the statute is "self executing," "[i]t is not necessary for a taxpayer to file a tax appeal to obtain the benefit of the Freeze Act. <u>Hackensack City</u>, <u>supra</u>, 405 <u>N.J. Super.</u> at 247 (quoting <u>Grandal Enters.</u>, <u>supra</u>, 292 <u>N.J. Super.</u> at 537). A taxpayer can, at its option, seek both a reduction in a property's assessment and pursue a

---

[6]  An appeal may be brought by

> a taxpayer feeling aggrieved by the assessed valuation of the taxpayer's property, or feeling discriminated against by the assessed valuation of other property in the county, or a taxing district which may feel discriminated against by the assessed valuation of property in the taxing district, or by the assessed valuation of property in another taxing district in the county[.]

[<u>N.J.S.A.</u> 54:3-21.]

Freeze Act claim.  See Grandal Enters., supra, 292 N.J. Super. at 538.

There are two exceptions to the Freeze Act.  "[W]hen the taxing authority demonstrates circumstances occurring after the base year assessment date that result in an increase in the value of the property or when the taxing authority implements a revaluation program affecting all property in the tax district." Id. at 536.  Unless one of these exceptions apply, "the application of the Freeze Act is 'mandatory and self-executing.'"  Rockaway 80 Assocs. v. Rockaway Twp., 15 N.J. Tax 326, 331 (Tax 1996) (quoting Clearview Gardens Assocs. v. Parsippany-Troy Hills Twp., 196 N.J. Super. 323, 328 (App. Div. 1984)).

"If the base year final judgment is entered after the assessing date for the freeze year, the taxpayer must apply for Freeze Act relief," and the burden is on the municipality to prove the application of one of the exceptions.  Rockaway 80 Assocs., supra, 15 N.J. Tax at 331 (citing Clearview Gardens Assocs., supra, 196 N.J. Super. at 328) (addressing a municipality's claim of change in value); see Grandal Enters., supra, 292 N.J. Super. at 536.  If the municipality establishes a prima facie case as to an exception applying, the court should order a plenary hearing to resolve any questions of fact as to the exception's application. See Entenmann's Inc. v. Totowa Borough, 19 N.J. Tax 505, 512 (Tax

2001) (citing <u>AVR Realty Co. v. Cranford Twp.</u>, 294 <u>N.J. Super.</u> 294, 300 (App. Div. 1996), <u>certif. denied</u>, 148 <u>N.J.</u> 460 (1997)), <u>aff'd</u>, 21 <u>N.J. Tax</u> 182 (App. Div. 2003).  If there are no factual issues, the matter should be decided on summary judgment.  <u>R.</u> 4:46-2(c).

"[A] timely [tax] appeal . . . or the dismissal of an untimely appeal has no effect on the application of the Freeze Act." <u>Hackensack City</u>, <u>supra</u>, 405 <u>N.J. Super.</u> at 247.  Unlike the timing of the filing of a tax appeal, which requires a swift determination because of its relation to a municipality's budget, concerns about timeliness do not outweigh a taxpayer's rights under the Freeze Act.  <u>Grandal Enters.</u>, <u>supra</u>, 292 <u>N.J. Super.</u> at 540.  Because a Freeze Act action is independent of a tax appeal, it is not subject to the same deadlines.  <u>See</u> <u>N.J.S.A.</u> 54:3-21 (requiring tax appeals be filed "on or before April 1, or 45 days from the date the bulk mailing of notification of assessment is completed in the taxing district, whichever is later").

"The Freeze Act . . . may be invoked at the option of the taxpayer on motion for supplementary relief to the Tax Court under the caption of the Tax Court judgment for the base year to which the Freeze Application is sought."  <u>R.</u> 8:7(d).  "The taxpayer need not submit any affidavits concerning the lack of change in value or that there has been no general revaluation."  <u>Clearview Gardens</u>

Assocs., supra, 196 N.J. Super. at 329. Although there is also no "statutory provision requiring that a Freeze Act motion be brought within a specific period of time," Grandal Enterprises, supra, 292 N.J. Super. at 540, regulations provide that "[a] taxpayer may apply to the county board of taxation within a reasonable period of time upon proper notice to the municipality seeking the enforcement of the Freeze Act with regard to a judgment previously entered by the county board of taxation." N.J.A.C. 18:12A-1.13(e).

In Freeze Act actions relating to Tax Court judgments, courts that confronted the timeliness of a Freeze Act action have looked to the doctrine of laches to determine whether an alleged delay in filing was reasonable, justified, and without prejudice to the taxing authority. See Fifth Roc Jersey Assocs., LLC v. Town of Morristown, 26 N.J. Tax 212, 229-30 (Tax 2011) ("The 'Freeze Act' has 'no specified time limitation . . . . Since there exists no applicable statute of limitations [courts] must [ ] ascertain whether the facts presented [ ] justify the imposition' of the Doctrine of Laches" (alterations in original) (quoting Jack Nissim & Sons, Inc. v. Bordentown Twp., 10 N.J. Tax 464, 468 (Tax 1989))).

"To determine whether the Doctrine of Laches applies, the court must weigh the 'length of the delay, the reasons for delay, and the changing conditions of either or both parties during the

delay.'" Ibid. (quoting Knorr v. Smeal, 178 N.J. 169, 181 (2003)). For laches to apply "[t]here 'must be a delay for a length of time which, unexplained and unexcused, is unreasonable under the circumstances and has been prejudicial to the other party.'" Id. at 230 (quoting W. Jersey Title & Guar. Co. v. Indus. Trust Co., 27 N.J. 144, 153 (1958)).

We conclude that the Tax Court judge here did not engage in this required analysis when considering whether plaintiff's Freeze Act claim was timely filed. Instead, he found that by not filing it within the period for filing a tax appeal plaintiff could be barred from pursuing the Freeze Act action.

We also conclude the judge erred by considering plaintiff's motion an action in lieu of prerogative writs, subject to the applicable forty-five day for filing a complaint in the Superior Court, see R. 4:69-6(a), and, as such, untimely and not cognizable in the Tax Court. We find no support for this conclusion. Plaintiff argued the approved plan did not call for a "complete reassessment" and also that the execution of the plan was inconsistent with the approval.

We conclude that the Tax Court judge's finding that the plan was complete because of the approvals obtained from the County and Division established defendant's prima facie entitlement to the exception's application. We part company with the judge as to his

14 A-1976-15T1

belief that the approvals alone were sufficient to establish as a matter of law that the plan resulted in a "complete reassessment" in light of plaintiff's evidence-based allegations about the plan's implementation. The fact that the County and the Division approved the reassessment plan does not necessarily mean the assessor and ASI conducted it in accordance with the approved plan.

Contrary to plaintiff's assertions, the fact that each and every property was not inspected does not mean a reassessment was not "complete." While Tax Courts have recognized "the Freeze Act [does not apply] in a year in which a county tax board approved reassessment program is adopted by a taxing district," Ennis, supra, 13 N.J. Tax at 430, they have looked to how the reassessment was conducted to determine whether it was done properly. In City of Elizabeth v. 264 First St., LLC, 28 N.J. Tax 408, 439-40 (Tax 2015), the court explained:

> [T]he term "reassessment", involves a change in the property assessments of all property or all property in a given class in a taxing district; or changes in property assessments to a substantial number of individual parcels in a taxing district, resulting in a variance in property values from one year to the next (except for changes to assessments permitted for added, omitted or added/omitted assessments, correction of mathematical errors, exemptions, demolitions, or changes required by tax appeal judgments). A reassessment of property is conducted and

carried out by, and under the supervision of, the tax municipal tax assessor. . . .  [A] "good reassessment program includes: an analysis of all recent sales of real property occurring within a taxing district, including a comparison of sales with the assessed values of the properties sold; an identification of real property value trends occurring within the taxing district; a review of all real property values, parcel by parcel within a taxing district; . . . gathering of pertinent income data and utilization of such data where applicable;...a reconciliation and revised true value developed for each property . . . and carrying forward revised taxable values to the tax list for the year in which the reassessment is to become effective." Ennis, supra, 13 N.J. Tax at 426-27 (quoting Handbook for New Jersey Assessors, Section 801.13 (3d ed. 1989)).  Thus, an effective and useful reassessment program "seeks to spread the tax burden equitably throughout a taxing district."  Ibid.

Whether a tax assessor conducted a reassessment in accordance with an approved "complete" plan is subject to the Tax Court's review and "must be based on the evidence before it and the data that are properly at its disposal.  It must also be consistent with the issues as framed by proper pleadings or settled presumptive rules reflecting the underlying policy that government action is valid."  Id. at 447 (quoting F.M.C. Stores Co. v. Borough of Morris Plains, 100 N.J. 418, 430 (1985)).

We are therefore constrained to vacate the order denying plaintiff relief and remand this matter for the Tax Court judge to consider whether laches barred the filing of plaintiff's Freeze

16

Act action and, if not, whether plaintiff raised a viable issue as to whether the reassessment was executed in accordance with the approved plan. If the court finds that an issue exists, it should conduct a plenary hearing to resolve any questions as to material facts.

The order under appeal is vacated and the matter remanded to the Tax Court for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION